"Where, as here, it admits its liability for the amount of the loss as adjusted, and is only desirous of having determined the party rightfully entitled thereto, and where two different persons are contending for the same fund, in two separate actions against the company, there is no reason why it should be put to the expense and trouble of two lawsuits, when the title to the fund can be litigated between the contending parties without the presence of the company."

The motion for interpleader should therefore be granted. Settle order on notice.

(174 App. Div. 491)

RICHARDSON v. STEUBEN COUNTY.

(Supreme Court, Appellate Division, Fourth Department.  June 15, 1916.)

1. PRINCIPAL AND SURETY ⬅171—RECOVERY OF MONEY PAID BY MISTAKE— FAILURE TO INVESTIGATE.

Where the surety upon the bond of a private bank to the county treasurer, when demand was made upon him to make good the loss of the county through failure of the bank, a county depository, failed to make investigation to ascertain the facts relating to the ownership of the bank by a partnership and that one of the partners had died, his failure to make such investigation did not bar his maintaining an action against the county to recover money paid under misapprehension to extinguish the supposed liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 491–493; Dec. Dig. ⬅171.]

2. PRINCIPAL AND SURETY ⬅102—SURETY OF PARTNERSHIP—LIABILITY FOR DEBTS CONTRACTED AFTER CHANGE IN PERSONNEL.

One who stands as a surety for a copartnership cannot be held upon his obligation for debts contracted after a change in the personnel of the firm.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. ⬅102.]

3. PRINCIPAL AND SURETY ⬅102—PARTNERSHIP AS PRINCIPAL—CONTINUING GUARANTY.

Where a contract of suretyship having a partnership as principal so specifically provides, it will be held to be a continuing guaranty, and to survive changes in its principal's firm.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. ⬅102.]

4. EVIDENCE ⬅461(1)—PARTNERSHIP AS PRINCIPAL—CONTINUING GUARANTY —INTENTION.

Where a contract of suretyship having a partnership as principal is ambiguous in its terms, recourse may be had to the surrounding circumstances to ascertain the intention of the parties as to whether the contract should be a continuing guaranty and survive changes in the principal's firm.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2129; Dec. Dig. ⬅461(1).]

5. PRINCIPAL AND SURETY ⬅102—SURETY FOR PARTNERSHIP—DEATH OF PARTNER.

The undertaking executed to the county treasurer for the security of his official deposits in a bank owned by a partnership and designated as a county depository did not continue in force beyond the existence of the identical firm owning the bank for which it was given, and death of a partner released the surety from liability for losses accruing there-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

after, in the absence of ambiguity, or specific words to show that the parties intended a contract of suretyship, having a partnership as principal, should survive change in the partnership and inure to the benefit of the new firm as well as the old.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. ☞102.]

Appeal from Trial Term, Steuben County.

Action by Clinton W. Richardson against the County of Steuben. Judgment directed for plaintiff, with interest from the commencement of the action, and defendant appeals. Affirmed.

The following is the opinion of Sawyer, J., at Trial Term:

In the year 1849 one George W. Hallock established a private bank at Bath, N. Y., which was thereafter continuously conducted under the name of the George W. Hallock Bank until May 31, 1912, when it was closed and its owners shortly afterwards adjudged to be bankrupts. Mr. Hallock died in the year 1895, and, following his death, the bank was owned and conducted by his wife, Mary H. Hallock, and his son, William N. Hallock, as copartners. After the death of William H. Hallock, which occurred the 7th day of April, 1908, his place in the business was taken by his son, William N. Hallock, who, with Mary H. Hallock as a partner, continued therein until Mrs. Hallock's death upon the 21st day of July, 1910. Thereafter the bank was carried on by William N. Hallock individually until about the 1st of June, 1911, when his mother, Louise N. Hallock, the widow of William H. Hallock, became a partner therein, and as so constituted it remained until its failure in May, 1912. While this bank was generally understood to belong to the Hallock family, no outsider appears to have, after the death of George W. Hallock, known which particular ones of the family were its owners, nor whether it was a corporation, a copartnership, or an individual enterprise. So closely did the members of this family keep their private concerns that even trusted employés, who had been in the bank many years, were in ignorance of the facts. From the beginning to the end of the business transactions in this bank there was no apparent change whatever, no suspension, no notice of dissolution, nothing to indicate to the public that any change at any time had taken place until its career was finally ended.

Shortly prior to January 24, 1910, Mr. William G. Masterman, who was county treasurer of the defendant county, designated it as one of his depositories, and upon that day it, by the name of George W. Hallock Bank, made and executed to him an undertaking for the security of his official deposits, upon the precise conditions prescribed by section 145 of the County Law (Consol. Laws, c. 11), which undertaking plaintiff and one George W. Peck signed as sureties. After its approval by the proper authorities various transactions were had by the county treasurer with the bank, so that upon the death of Mrs. Mary H. Hallock the next July there remained with it on deposit a balance of about $2,000 of county moneys. Following her death, and between then and the failure of the bank in May, 1912, its business relations with the county treasurer continued, with the result that these deposits were entirely withdrawn; but by reason of other and subsequent deposits the bank, when it closed, had become indebted to defendant upon its treasurer's deposits, including interest, in the sum of $6,081.99. After the failure of the bank, and upon June 4, 1912, Mr. Masterman, as such treasurer, served a notice upon plaintiff, and his cosurety, in which he stated to them that they were liable upon the undertaking in question for such remaining deposits, and demanded payment. Shortly thereafter plaintiff paid to him the sum of $3,041 in settlement of his supposed liability, taking in exchange an assignment of an undivided one-half of the county's claim against the bankrupt estate, which moneys were duly and properly turned over by Mr. Masterman to defendant. Plaintiff now seeks to recover the moneys so paid, upon the theory that the payment was made under a mistake of fact, and without knowledge that the death of Mrs. Mary H. Hallock had dissolved the

copartnership then owning the bank, and therefore terminated his liability, except for moneys then on deposit.

[1] That neither Mr. Masterman nor the plaintiff knew that Mrs. Mary H. Hallock had been a partner in the banking firm until long after its failure, and that both of them were ignorant of the fact that her death may have ended the obligation of the sureties to the undertaking, is undisputed, and that the payment was made in the mutual supposition of both of them that nothing had occurred since its making and delivery to release plaintiff from his liability for the deposits owing at the time of the failure is clearly shown. It is quite likely that after the demand was made upon him plaintiff could, by reasonable inquiry, have ascertained the true situation of affairs, and resisted payment upon the same ground he now rests upon. His failure to make such investigation does not, however, operate as a bar to the maintenance of this action. Lawrence v. Am. Nat'l Bank, 54 N. Y. 432; Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. (N. S.) 273, 113 Am. St. Rep. 909.

[2] The general rule that one who stands as a surety for a copartnership cannot be held upon his obligation for debts contracted after a change in the personnel of the firm is too well established to require comment or citation of authority, and is fully recognized by the learned counsel for the defendant. The action is, however, defended upon the theory that the undertaking in question, reciting, as it does, that it is given to secure deposits in the George W. Hallock Bank, and being executed by the bank in that name by W. M. Hallock, cashier, and nowhere referring to the copartnership of Mary H. Hallock and William N. Hallock, then its owner, is to be construed as a continuing security for the bank as an institution; that the rule of strictissimi juris under which such obligations are ordinarily construed is not applicable, for the reason that, as it stands, the instrument of suretyship is ambiguous, and is therefore to be given the construction most favorable to the rights of the county, whose money has been deposited upon its faith. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; Gamble v. Cuneo, 21 App. Div. 413, 47 N. Y. Supp. 548. If this contract is to be held as an exception to the general rule above noted, it must be upon the strength of two English cases: Barclay v. Lucas, 1 Term Rep. 292; Metcalf v. Bruin, 12 East, 400.

Of these Barclay v. Lucas was decided by the Court of King's Bench in 1786, and is better known than Metcalf v. Bruin, decided by the same court in 1810. A slight difference in the facts of the latter case also tends to weaken its authority upon the proposition here advanced. Barclay v. Lucas has been often discussed, both by the courts and text-book writers, and while it has never, so far as I can ascertain, been expressly overruled, it has been constantly criticized and distinguished by the courts both in England and in this state. The contract there under consideration was one guaranteeing the honesty of a person who was to be taken into the service of the firm of J. Barclay & Co., private bankers, "as a clerk in the shop and counting house," and the decision turned upon the intendment of the parties, as determined from the circumstances surrounding the making of the contract. Whatever weight as a precedent this holding may have upon a similar state of facts, it can have no controlling force here. As was said by Mr. Justice Barrett: "The wide difference between such a case and that of a guaranty *for* the house of a principal debtor is apparent. In the latter case 'the house' could not, without an express stipulation to that effect, well be supposed to mean the same house, however the individual partners might change, and the guarantor's responsibility must have been understood to end when the person for whom he agreed to be responsible ceased to constitute the house." Burch v. De Rivera, 53 Hun, 371, 6 N. Y. Supp. 206.

It may be said that the language quoted, because of the facts there presented, was a statement obiter; but it nevertheless expresses what seems to me the true limitation of Barclay v. Lucas, and its distinction from that then under consideration as well as that now at bar. Here the obligation is not to secure to the George W. Hallock Bank, as such, the honesty of a prospective employé, or even payment to it of another's indebtedness, but is a guaranty to the defendant and its county treasurer for the George W. Hal-

lock Bank as a principal debtor. With us it has never been held by the courts that a guaranty under an institutional name continued in force beyond the existence of the identical firm for which it was given, and I do not deem Barclay v. Lucas, running, as it does, counter to our entire policy, a sufficient warrant for so doing.

[3, 4] It is undoubtedly true that, where such a contract so specifically provides, it will be held to be a continuing guaranty, and to survive changes in its principal's firm; and it is equally true that, where such a contract is ambiguous in its terms, recourse may be had to the surrounding circumstances for ascertainment of the intention of the parties. Bennett v. Draper, 139 N. Y. 266, 34 N. E. 791; Gamble v. Cuneo, 21 App. Div. 413, 47 N. Y. Supp. 548. This undertaking contains, however, no specific provision for changes in the business composition of the George W. Hallock Bank, nor does there appear upon its face any ambiguity as to the intendment of its makers. They are presumed under the law of our jurisdiction to have had in contemplation the George W. Hallock Bank as then constituted, namely, William N. Hallock and Mary H. Hallock doing business as copartners under that name.

[5] The earnest diligence of counsel has brought to my attention many cases bearing upon this general subject of surety's liability. All have been carefully examined, but need not here be specifically referred to. It is sufficient to say that together they establish the law of this state to be as above stated, namely, that in the absence of ambiguity or specific words to show that the parties intended it should survive change in the partnership and inure to the benefit of the new firm as well as the old, such a contract terminates with the existence of the firm for which it was given.

Upon the claim assigned to him plaintiff has received certain dividends, for which he is accountable, as well as for the claim itself, to defendant, and his recovery must be contingent upon a reassignment of the claim and a crediting of such dividends upon his demand.

Judgment is directed for plaintiff, with interest from the commencement of the action, together with costs.

James Flaherty, of Prattsburg (Fred A. Robbins, of Rochester, of counsel), for appellant.

Monroe Wheeler, of Buffalo, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Sawyer, J., delivered at the Trial Term.

---

(174 App. Div. 304)

### WIGGINS v. FREEMAN.

(Supreme Court, Appellate Division, Second Department. July 28, 1916.)

CORPORATIONS ☞627—RECEIVERS—ASSIGNMENT OF RENTS—RECEIVER'S DUTY.

Where the assignee for the benefit of creditors of an insolvent corporation, the owner of an equity of redemption, assigned future rents to secure loans to himself as assignee, his assignment did not take precedence of the receiver's right and duty to collect them for the benefit of the foreclosure action, the receiver having the prior right, and when the assignee was appointed receiver in the foreclosure action he should have held the rents for the credit of the action, and not paid them over, which he did at his own peril.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2476; Dec. Dig. ☞627.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes